IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDGEWELL PERSONAL CARE BRANDS, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. ) |
| ALBAAD MASSUOT YITZHAK, LTD. and ALBAAD USA, INC., | ) JURY TRIAL DEMANDED ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S ORIGINAL COMPLAINT**

1.  Edgewell Personal Care Brands, LLC ("Edgewell"), by its attorneys, files this Complaint against Albaad Massuot Yitzhak, Ltd. ("Albaad Ltd.") and Albaad USA, Inc. ("Albaad USA") (collectively, "Defendants"), and state and allege as follows:

2.  This is a patent infringement action to stop Defendants' infringement of the following patents (collectively, the "Asserted Patents"):

    a.  U.S. Patent No. 6,432,075 to Wada et al., titled "Applicator for Tampons" (the '075 Patent) (Ex. A).

    b.  U.S. Patent No. 9,192,522 to Edgett et al., titled "Tampon Assembly Having Shaped Pledget" (the '522 Patent) (Ex. B).

    c.  U.S. Patent No. 9,107,775 to Edgett et al., titled "Tampon Pledget with Improved By-Pass Leakage Protection") (the '775 Patent) (Ex. C).

3.  Edgewell seeks injunctive relief prohibiting Defendants from making, using, offering for sale, selling, and/or importing tampons infringing the Asserted Patents, including but not limited to the Accused Products (as defined below), as well as an award of monetary

damages to compensate Edgewell for Defendants' infringing acts and willful infringement of the '075 Patent.

## THE PARTIES

4. Plaintiff Edgewell is a Delaware limited liability company with a registered office at 1209 Orange Street, Wilmington, Delaware 19801.

5. Defendant Albaad Ltd. is a company based in Israel. Albaad Fem Israel, the Tampons Division of Albaad Ltd., is located at Caesarea Industrial Park 39900, P.O. Box 3541, Caesarea, Israel.

6. Defendant Albaad USA is a North Carolina corporation with its principal place of business at 129 Technology Drive South, Reidsville, North Carolina 27320.

7. On information and belief, Albaad Ltd. and Albaad USA are related legal entities.

## JURISDICTION AND VENUE

8. This is an action for patent infringement pursuant to the Patent Laws of the United States, in particular 35 U.S.C. §§ 271, 281, 283, 284, and 285. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1338(a).

9. Upon information and belief, Defendants have, through their manufacture, sales, importation, and/or distribution of the Accused Products, transacted business in this District and/or contracted to supply items in this District, and are therefore subject to jurisdiction within this District pursuant to the Delaware Long-Arm Statute, Del. Code Ann. tit. 10 § 3104(c)(1-2).

10. Additionally or alternatively, Defendants have, through their manufacture, sales, importation, and/or distribution of the Accused Products caused and will continue to cause injury to Edgewell both within and outside of this District. Upon information and belief, Defendants

derive substantial revenue from the sale of the Accused Products within this District. *See id.* at § 3104(c)(4).

11. Defendants have sufficient minimum contacts with this District, through at least the importation, distribution, offer and/or sale of infringing goods within this District, such that this Court has personal jurisdiction over Defendants.

12. Alternatively, upon information and belief, Albaad Ltd. is an international company not subject to jurisdiction in any state's court of general jurisdiction, and personal jurisdiction will be established over Albaad Ltd. upon service pursuant to Fed. R. Civ. P. 4(k)(2).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as this Court has personal jurisdiction over Albaad USA and Albaad Ltd.

## BACKGROUND

14. Edgewell is a leader in the personal care products industry. Edgewell's family of affiliated companies manufacture and market a diversified range of personal care products in the wet shave, skin care, feminine care and infant care categories with a portfolio of over 25 brands, including feminine products marketed under the Playtex® brand.

15. Edgewell is the owner of the Playtex® family of trademarks.

16. Edgewell and its predecessors-in-interest have invested millions of dollars developing new technologies related to tampons that have been sold under the Playtex® brand. Edgewell owns over 100 patents on tampon-related technology.

17. Playtex® brand tampons are manufactured in the state of Delaware and sold throughout the United States and the world. One such product is the Playtex® Sport® tampon, which is directed to women with an active lifestyle.

18. The Playtex® Sport® tampon is sold in light, regular, super, and super plus absorbencies. For example, images of the front and back of the packaging for the Playtex® Sport® tampon with regular absorbency are depicted below:





19. The Playtex® Sport® tampon incorporates various aspects of Edgewell's patented tampon technologies.

20. In 2010, Albaad Ltd. acquired Rostam Ltd., a manufacturer of private label tampons for Target, Wal-Mart, Kroger, CVS, Walgreens, and others in the United States (*see* Ex. D).

21. At least since this 2010 acquisition, Albaad Ltd. has manufactured private label tampons in Israel that are intended to be marketed and sold in the United States.

22. According to its own website, Albaad Ltd. is dedicated to being the "Global Leader in Private Label Tampons…" with a number of "national brand equivalents." *See* http://www.albaad.com/generalPage.aspx?pageID=fem&sLanguage=en-US

23. Additionally, a Consumer FAQ section of Albaad Ltd.'s website available at http://www.albaad.com/generalPage.aspx?pageID=ConsumerFAQ&sLanguage=en-US states the following:

> **Q. Does your private label brand tampon have the same absorbency level as the National Brand's (Tampax, Playtex, Kotex)?**
> A. Yes, tampons are available in either 3 or 4 absorbency levels: Light (less than 6 grams), Regular (6-9 grams), Super (9-12 grams), and Super Plus (12-15 grams). Each range represents the grams of fluid that can be absorbed by all manufacturers' tampons based on a standardized laboratory test.

24. On information and belief, the private label tampons that are manufactured by Albaad Ltd. in Israel are imported into the United States through ports on the Eastern seaboard, such as Newark, NJ and Charleston, SC.

25. On information and belief, Albaad Ltd.'s private label tampons that arrive from Israel in United States are then distributed within the United States through the efforts of Albaad USA.

5

26. According to the LinkedIn page for Albaad USA (Ex. E), Albaad USA produces tampons for the North American market, and offers contract and manufacturing services that extend to its global operation.

27. At least as early as 2011, Albaad Ltd. began developing a plastic applicator for a private label tampon that was intended to compete directly with the Playtex® Sport® tampon.

28. In the timeframe of 2010-2011, Edgewell's predecessor-in-interest marked its Playtex® Sport® tampon with applicable patents, including the '075 Patent, as shown below.



29. The '075 Patent is directed to the details of the plastic applicator used in the Playtex® Sport® tampon.

30. Images of the plastic applicators used in the Playtex® Sport® tampon and Albaad Ltd.'s private label tampon are shown below.



31. Defendants' private label tampons that use the plastic applicator shown above are marketed to consumers in the United States with the phrase "Compare to Playtex® Sport®." *See* Ex. F.

32. Collectively, Defendants at least manufacture, import, offer for sale, and sell the tampons that are ultimately sold at retail outlets within the United States as the following products (a)-(f) identified below, and pictured (packaging) in Ex. F.  Collectively, products (a)-(f) below are the "Accused Products."

        a. CVS Super Absorbency tampons

        b. CVS Regular Absorbency tampons

        c. Target Super Absorbency tampons

        d. Target Regular Absorbency tampons

        e. Kroger Super Absorbency tampons

        f. Kroger Regular Absorbency tampons

33. Each of the Accused Products states on its packaging that it is "Made in Israel."

34. Albaad Ltd. makes the Accused Products in its facilities in Israel.

35. Albaad Ltd. has submitted one or more 510(k) applications to the United States Food and Drug Administration ("FDA") to gain regulatory approval to market the Accused Products to consumers in the United States.

36. Each of the Accused Products infringes at least one claim of each of the Asserted Patents.

37. Upon information and belief, through their actions, Defendants have also (i) induced third parties to directly infringe at least one claim of each of the Asserted Patents and/or (ii) contributed to the direct infringement of at least one claim of each of the Asserted Patents by third parties, in that those third parties have at least used, offered for sale, and/or sold the Accused Products in the United States.

## COUNT I
## PATENT INFRINGEMENT OF U.S. PATENT NO. 6,432,075

38. Edgewell incorporates the above paragraphs herein by reference.

39. On August 13, 2002, United States Patent No. 6,432,075 was duly and legally issued.

40. The '075 Patent discloses, *inter alia*, an applicator for a tampon with an outer cylinder having certain geometric features for ease of insertion. The outer cylinder includes a plurality of valves for ejecting the pledget, which absorbs the bodily fluids. A true and correct copy of the '075 Patent is attached hereto as Exhibit A.

41. Unicharm Corporation is the owner of the '075 Patent by virtue of assignments that have been duly and properly recorded with the U.S. Patent and Trademark Office on or about November 8, 2000.

42. In 2004, Unicharm Corporation granted Edgewell's predecessor-in-interest an exclusive license to practice the '075 Patent within the United States, and that exclusive license has been duly assigned to Edgewell. The exclusive license grants to Edgewell substantially all of the rights in the '075 patent, including the right to bring suit under the '075 Patent.

43. Upon information and belief, Defendants have manufactured, made, marketed, sold, imported, and/or used the Accused Products, comprising all of the elements and limitations of one or more of the claims of the '075 Patent, and therefore Defendants have directly infringed one or more claims of the '075 Patent; and/or have induced and/or contributed to the infringement of one or more of the claims of the '075 Patent by others.

44. Consequently, Defendants have infringed and currently infringe the '075 Patent, literally and/or under the doctrine of equivalents by making, using, selling, offering for sale, and/or importing the Accused Products without permission or license from Edgewell.

45. Defendants' infringement of the '075 Patent is willful and deliberate, in view of (i) Defendants' prior knowledge of the '075 Patent, and/or (ii) the marking of the Playtex® Sport® products with the '075 Patent.

46. Indeed, Defendants are well aware of the Playtex® Sport® product line, as each of the Accused Products displays "Compare to Playtex® Sport®" prominently on their packaging. Despite this knowledge of the Playtex® products and the '075 Patent, Defendants continue to make, use, offer for sale, sell, and/or import the Accused Products, in direct competition with Edgewell.

47. Edgewell is entitled to recover damages as a result of Defendants' infringing conduct, as well as interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284.

Edgewell is also entitled to treble damages and recovery of attorneys' fees as a result of Defendants' willful infringement of the '075 Patent.

48. Upon information and belief, Defendants will continue their infringement of one or more claims of the '075 Patent unless enjoined by the Court. Defendants' infringing conduct thus causes Edgewell irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNT II
## PATENT INFRINGEMENT OF U.S. PATENT NO. 9,192,522

49. Edgewell incorporates the above paragraphs herein by reference.

50. On November 24, 2015, United States Patent No. 9,192,522 was duly and legally issued.

51. The '522 Patent discloses, *inter alia*, a tampon applicator assembly having an applicator barrel with a tapered insertion tip and a shaped pledget housed in the applicator barrel. A true and correct copy of the '522 Patent is attached hereto as Exhibit B.

52. Edgewell is the owner of the '522 Patent by virtue of assignments that have been duly and properly recorded with the U.S. Patent and Trademark Office.

53. Upon information and belief, Defendants have manufactured, made, marketed, sold, imported, and/or used the Accused Products, comprising all of the elements and limitations of one or more of the claims of the '522 Patent, and therefore Defendants have infringed one or more claims of the '522 Patent; and/or have induced and/or contributed to the infringement of one or more of the claims of the '522 Patent by others.

54. Defendants have infringed and currently infringe the '522 Patent, literally and/or under the doctrine of equivalents by making, using, selling, offering for sale, and/or importing the Accused Products without permission or license from Edgewell.

55. Edgewell is entitled to recover damages as a result of Defendants' infringing conduct, as well as interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284. Edgewell reserves the right to seek treble damages and recovery of attorneys' fees as a result of Defendants' willful infringement of the '522 Patent, as further investigation and discovery so indicates.

56. Upon information and belief, Defendants will continue their infringement of one or more claims of the '522 Patent unless enjoined by the Court. Defendants' infringing conduct thus causes Edgewell irreparable harm and will continue to cause such harm without the issuance of an injunction.

## COUNT III
## PATENT INFRINGEMENT OF U.S. PATENT NO. 9,107,775

57. Edgewell incorporates the above paragraphs herein by reference.

58. On August 18, 2015, United States Patent No. 9,107,775 was duly and legally issued.

59. The '775 Patent discloses, *inter alia*, a tampon pledget including two pads in a cross-pad configuration that are compressed to achieve a certain density and fluid-absorption parameters. A true and correct copy of the '775 Patent is attached hereto as Exhibit C.

60. Edgewell is the owner of the '775 Patent by virtue of assignments that have been duly and properly recorded with the U.S. Patent and Trademark Office.

61. Upon information and belief, Defendants have manufactured, made, marketed, sold, imported, and/or used the Accused Products, comprising all of the elements and limitations of one or more of the claims of the '775 Patent, and therefore Defendants have infringed one or more claims of the '775 Patent; and/or has induced and/or contributed to the infringement of one or more of the claims of the '775 Patent by others.

62. Defendants have infringed and currently infringe the '775 Patent, literally and/or under the doctrine of equivalents by making, using, selling, offering for sale, and/or importing the Accused Products without permission or license from Edgewell.

63. Edgewell is entitled to recover damages as a result of Defendants' infringing conduct, as well as interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284. Edgewell reserves the right to seek treble damages and recovery of attorneys' fees as a result of Defendants' willful infringement of the '775 Patent, as further investigation and discovery so indicates.

64. Upon information and belief, Defendants will continue their infringement of one or more claims of the '775 Patent unless enjoined by the Court. Defendants' infringing conduct thus causes Edgewell irreparable harm and will continue to cause such harm without the issuance of an injunction.

## JURY DEMAND

Edgewell hereby requests a jury trial of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Edgewell prays for judgment that:

a. One or more claims of each of United States Patent Nos. 6,432,075, 9,192,522, and 9,107,775 have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or by others to whose infringement Defendants have contributed and/or by others whose infringement has been induced by Defendants;

b. Defendants, Defendants' respective officers, agents, servants, employees, contractors, and attorneys, and all those in active concert and participation with

the foregoing persons and entities be enjoined permanently from further infringement of the Asserted Patents.

c. Edgewell be awarded damages, together with prejudgment interest and costs, to compensate Edgewell for Defendants' infringement of the Asserted Patents, and, with respect to at least the '075 Patent, that such award be increased by three times the amount assessed in view of Defendants' willful infringement;

d. Edgewell be awarded its costs, disbursements, and attorneys' fees pursuant to 35 U.S.C. § 285;

e. Edgewell recovers pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein; and

g. Edgewell be awarded such other and further relief, at law or in equity, as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*

OF COUNSEL:

Daniel J. Burnham
Jason T. Kunze
NIXON PEABODY LLP
70 West Madison St., Suite 3500
Chicago, IL 60602
(312) 977-4400

Jason C. Kravitz
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

December 21, 2015
9725032

Thomas C. Grimm (#1098)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
skraftschik@mnat.com

*Attorneys for Edgewell Personal Care Brands, LLC*