**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EDGEWELL PERSONAL CARE BRANDS, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 15-1188-RGA-MPT ) |
| ALBAAD MASSUOT YITZHAK, LTD. and ALBAAD USA, INC., | ) ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

This matter arises from Edgewell Personal Care Brands, LLC's ("Edgewell") filing of its initial Complaint against Albaad Massuot Yitzhak, Ltd. ("Albaad Ltd.") and Albaad USA, Inc. ("Albaad USA") (collectively, "Albaad") alleging infringement of U.S. Patent Nos. 6,432,075 ("the '075 patent"), 9,192,522 ("the '522 patent") and 9,107,775 ("the '775 patent").[1] Albaad answered that complaint on April 5, 2016.[2] Edgewell then filed a First Amended Complaint on August 8, 2016, which added a claim for infringement of U.S. Patent No. 8,551,034 ("the '034 patent").[3] Edgewell filed a Second Amended Complaint on September 6, 2016, before Albaad's answer to the First Amended Complaint was due, dropping its claim relating to the '775 patent.[4]

Albaad then moved to dismiss Count III of the Second Amended Complaint

---

[1] D.I. 1.
[2] D.I. 10.
[3] D.I. 40.
[4] D.I. 48.

1

(infringement of the '034 patent) pursuant to FED. R. CIV. P. 12(b)(6) on September 27, 2016.⁵ Subsequently, on November 15, 2016, the Scheduling Order deadline for motions to amend or supplement pleadings expired.⁶

On January 19, 2017, Albaad filed petitions for inter partes review ("IPR") in the U.S. Patent and Trademark Office, seeking to invalidate the asserted claims of the '522 and '075 patents.⁷ On the same date, Edgewell withdrew certain claims of the '522 patent.⁸ The next day, January 20, 2017, the court granted Albaad's motion to dismiss Count III of the Second Amended Complaint without prejudice.⁹

Edgewell moved for leave to file a Third Amended Complaint on February 3, 2017 to add previously unpled copyright and trade dress infringement claims and to drop its infringement claim of the '034 patent.¹⁰ A claim construction hearing was scheduled for April 5, 2017 with fact discovery to be completed by June 30, 2017.¹¹

Currently before the court is Edgewell's motion for leave to amend and file its Third Amended Complaint.¹²

## II.  BACKGROUND

Edgewell is a Delaware limited liability company.¹³ Edgewell claims to be a leader in the personal care products industry. Edgewell and its affiliates manufacture

---

⁵ D.I. 54.
⁶ D.I. 14 at ¶ 2.
⁷ D.I. 79 at 4.
⁸ *Id.*
⁹ *Id.*; D.I. 75.
¹⁰ D.I. 77 at Ex. 2.
¹¹ D.I. 14 at ¶ 9; *id.* at ¶ 3c.
¹² D.I. 77.
¹³ D.I. 77-1 at ¶ 7.

and market a diverse range of personal care products including wet shave, skin care, infant care, and feminine care–including feminine products marketed under the Playtex brand.[14]  Edgewell is the exclusive licensee of the Playtex trademark with respect to feminine care products in the United States.[15]  Edgewell owns numerous related trademarks, including Playtex Sport, as well as the "distinctive pink and green trade dress of Playtex Sport products."[16]  Edgewell has also registered the copyright for the design of the wrappers of the individual tampons.[17]  The Playtex Sport tampon, which is manufactured in Delaware, is sold in light, regular, super, and super plus absorbencies.[18]

Albaad Ltd. is a company based in Israel.[19]  Albaad USA is a North Carolina corporation and is a related legal entity of Albaad Ltd.[20]  Albaad states on its website that it is dedicated to being the "'global leader in private tampon labels' with a number of 'national brand equivalents.'"[21]  Albaad acquired Rostam Ltd., a manufacturer of private label tampons for Target, Kroger, CVS, and Walgreens in the United States in 2010.[22]  Since this acquisition, Albaad has manufactured private label tampons in Israel to be marketed and sold in the United States.[23]

## III.   GOVERNING LAW

---

[14] *Id.* at ¶ 17.
[15] *Id.* at ¶ 18.
[16] *Id.*
[17] *Id.* at ¶ 23.
[18] *Id.* at ¶¶ 20-21.
[19] *Id.* at ¶ 8.
[20] *Id.* at ¶ 9.
[21] *Id.* at ¶ 25.
[22] *Id.* at ¶ 24.
[23] *Id.* at ¶ 25.

3

Pursuant to FED. R. CIV. P. 16(b)(4), a schedule may be modified "only for good cause and with the judge's consent."[24] If "a party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order., Rule 16 of the Federal Rules of Civil Procedure is implicated."[25] Good cause "exists when the imposed schedule cannot reasonably be met despite the diligence of the party seeking the extension."[26] However, a "strategic mistake does not equate to a showing of good cause under Rule 16."[27]

Similarly, FED. R. CIV. P. 15(a)(2) states "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[28] "The decision to grant or deny leave to amend lies within the discretion of the court."[29] The Third Circuit has adopted a liberal approach to the amendment of pleadings.[30] "In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party."[31] An amendment is considered futile if it fails to state a claim upon which relief can be

---

[24] FED. R. CIV. P. 16(b)(4).
[25] *WebXchange Inc. v. Dell Inc.*, C.A. No. 08-132-JJF, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010).
[26] *Le v. City of Wilmington*, C.A. No. 08-615-LPS, 2010 WL 2754253, at *2 (D. Del. July 12, 2010) (citing *ICU Med. Inc. v. Rymed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009)).
[27] *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, C.A. Nos. 04-1436-LPS, 06-404-LPS, 08-371-LPS, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012).
[28] FED. R. CIV. P. 15(a)(2).
[29] *Le*, 2010 WL 2754253, at *2 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).
[30] *Id.*; *see also Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1980).
[31] *Le*, 2010 WL 2754253, at *2; *see also In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

granted, advances a claim or defense that is legally insufficient on its face, or if it is frivolous.[32] "Delay alone is an insufficient reason to deny leave to amend."[33] However, if the delay is coupled with either an unwarranted burden on the court or undue prejudice to the non-moving party as a result of the amendment, denial of the motion is appropriate.[34] "A party may suffer undue prejudice if the proposed amendment causes surprise or results in additional discovery, additional costs, or additional preparation to defend against the new facts or theories alleged."[35] The question of undue delay requires courts to focus on the movant's reasons for not amending sooner.[36] Furthermore, in resolving the issue of prejudice, courts must focus on the hardship to the non-moving party if the amendment were permitted.[37]

## IV. DISCUSSION

### A. Rule 15(a)(2)

#### 1. Undue Delay

"In evaluating whether a party's delay is undue, the court must focus on the movant's reasons for not amending its pleading earlier."[38] "The Third Circuit also stresses the importance of a movant articulating a 'colorable excuse' for the delay."[39]

Edgewell argues it could not amend its complaint to include the copyright

---

[32] *Le*, 2010 WL 2754253, at *2; *see also Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006).
[33] *Le*, 2010 WL 2754253, at *2.
[34] *Id.*
[35] *Id.* (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).
[36] *Id.*
[37] *Id.*
[38] *Id.* at *3 (citing *Cureton*, 252 F.3d at 273).
[39] *Id.* (citing *Arthur v. Maersk*, 434 F.3d 196, 205 n.11 (3d Cir. 2006)).

5

and trade dress infringement claims before the November 2016 deadline because the supplemental registration was not granted until January 2017.[40] Additionally, Edgewell states that because of the ongoing settlement negotiations, as well as the pending motion to dismiss on Count III, Edgewell was "not able to reach a point of stasis whereby amendment was reasonable."[41]

Regardless of the true cause, Edgewell has stated a colorable excuse for the delay, and Albaad provides no explicit basis for rejecting Edgewell's assertions. Therefore, the delay here is not undue.

### 2. Bad Faith and Dilatory Motive

Edgewell claims it does not bring this motion in bad faith. Specifically, Edgewell states it sought consent to amend "only after it had done a thorough investigation to determine whether it had a good-faith basis to assert the additional causes of action."[42] Albaad generally responds that Edgewell's decision not to amend its complaint within the deadline was a strategic error and is thus evidence of a dilatory motive. Albaad points out that Edgewell admitted to knowing the basis of these additional claims in August 2016–ten weeks before the November deadline.[43] Albaad also hints that Edgewell's decision to wait until Albaad filed its IPRs is further evidence of dilatory motive.[44]

---

[40] D.I. 77 at 6.
[41] Id.
[42] Id. at 7.
[43] Id. at 2; D.I. 79 at 7.
[44] D.I. 79 at 8 ("Indeed, the most reasonable explanation for the timing of Edgewell's motion is that it saw the IPRs, recognized the very real possibility that the claims would be declared invalid, and was trying to salvage something from this case.").

6

Albaad's theory as to why Edgewell waited until after the deadline had expired is little more than a bare assertion. Albaad does not provide any persuasive examples or evidence of dilatory motives on behalf of Edgewell. Therefore, the bare assertions that Edgewell acted in bad faith or with a dilatory motive are unsupported.

### 3. Unfair Prejudice

To establish unfair prejudice to justify denial of the motion, Albaad must show that it was "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."[45] Other factors considered are whether further discovery is necessary, and whether the proposed amendments will add costs to the litigation by causing the opponent to defend against new theories or facts.[46]

Edgewell argues granting its motion for leave to amend will not prejudice Albaad. Specifically, Edgewell states that because the accused products are identical, only limited discovery relating to the packaging is necessary.[47] Edgewell also asserts that Albaad "should have expected these claims from the moment their infringing packaging hit store shelves."[48] Lastly, Edgewell contends that since discovery is set to close on June 30, 2017, with the trial scheduled for May 2018, the proposed amendments will not delay the progression of the case nor prejudice Albaad.[49]

Albaad responds that the proposed amendments will force it to seek

---

[45] *Le*, 2010 WL 2754253, at *4 (citing *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).
[46] *Id.*
[47] D.I. 77 at 7.
[48] *Id.*
[49] *Id.*

7

"extensive discovery" in areas which have not been part of the instant case.[50] Albaad argues that there is simply insufficient time remaining in the discovery period for it to obtain the information necessary from Edgewell to successfully defend itself against the proposed additional claims.[51]

Albaad has demonstrated that it will need extensive further discovery for the additional proposed claims which will consequently increase litigation costs by requiring it to defend against new claims. Thus, Albaad will be unfairly prejudiced by Edgewell's proposed amendments.

### 4. Futility

Edgewell argues its proposed amendments are not futile. It states that its new causes of action provide claims as a matter of law.[52] Albaad does not, and can not, rebut this argument. Therefore, Edgewell's amendments are not futile.

### B. Rule 16(b)(4)

Edgewell argues it meets the good cause standard under FED. R. CIV. P. 16 because Albaad committed the alleged infringement "during the pendency of the instant action."[53] Edgewell further alleges it began investigating these claims "immediately upon notice thereof" and because these additional claims relate to the same accused products, there is good cause to allow its proposed amendments.[54]

Albaad argues Edgewell's decision not to amend before the deadline expired was

---

[50] D.I. 79 at 10.
[51] D.I. 77 at 10-11 (Albaad lists what it will need to fully explore to successfully defend against Edgewell's new claims.).
[52] *Id.* at 7.
[53] *Id.* at 6.
[54] *Id.*

8

strategic in nature and, therefore, does not meet the good cause standard under Rule 16.[55] It cites this court's decision in *Mega Pharms., Inc. v. Teva Pharms. USA, Inc.* in support.[56] *Mega Pharms.*, a decision by Chief Judge Stark, reads in pertinent part:

> [I]t is unclear why multiple months of negotiations would be necessary to determine whether Defendant would support Plaintiffs' Motion. Even when the email chain discusses Plaintiffs' Motion, it evidences Defendant's consistent opposition to Plaintiffs' request. *Plaintiffs' alleged 'negotiations' are not strong evidence of diligence*, especially as they coincided with waiting more than four months to seek to amend their pleading. . . . *It was Plaintiffs, not Defendant, who were in control of when to move for leave to amend their complaint or to amend the Scheduling Order. By waiting so long to do so, with seemingly no justification for delay other than an unfounded hope (so far as the record reveals) that Defendant might eventually agree to Plaintiffs' request, all while the parties expended substantial efforts litigating the case based on the assumption that Plaintiffs' request would not be granted. . . . Plaintiffs have failed to show the good cause required* for the Court to grant their Motion.[57]

This argument is especially persuasive. *Mega Pharms.* is strikingly similar to the case at bar. Indeed, as Albaad states, Edgewell did not move for leave to amend until *after* Albaad filed IPRs seeking to invalidate the remaining asserted patent claims.[58] Edgewell admits they learned of the possible new claims in the last week of August.[59] Edgewell further concedes it spent the next roughly three months investigating the extent of the alleged infringement, taking steps to register its copyright in the design of the wrappers, and seeking Albaad's consent to amend its pleading.[60] As the plaintiff,

---

[55] *See generally* D.I. 79 at 6-10.
[56] *Id.* at 7-8.
[57] *Mega Pharms., Inc. v. Teva Pharms., USA, Inc.*, CA. No. 15-785-LPS, 2016 WL 6693113, at *2 (D. Del. Nov. 14, 2016) (emphasis added).
[58] *See generally* D.I. 77; *see also* D.I. 79 at 1.
[59] D.I. 77 at 2; D.I. 78 at ¶ 2.
[60] D.I. 77 at 2; *see generally* D.I. 80 (Email correspondence showing Edgewell sought Albaad's consent to amend its pleadings as early as January 23, 2016.).

9

Edgewell controls the proceedings. Its decision to seek Albaad's consent appears to have been tactical. Thus, Edgewell's conduct is not consistent with Rule 16.

**V.     CONCLUSION**

For the reasons contained herein, it is recommended that:

(1) Edgewell's motion for leave to amend and file its third amended complaint (D.I. 77) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: June 7, 2017                     /s/ Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE